OPINION OF THE COURT
Hancock, Jr., J.
Section 70.04 of the Penal Law provides that second violent felony offenders must receive enhanced sentences.[1] In order for a prior violent felony to be effective as a predicate for enhanced sentencing under section 70.04, the sentence on the *244 prior felony must have been imposed no more than 10 years before commission of the felony on which the defendant is being sentenced (§ 70.04 [1] [b] [iv]). For the purpose of determining whether this 10-year limitation has been exceeded, the statute provides for exclusion of any period of time that the defendant was incarcerated for any reason between the time of commission of the previous felony and the commission of the current felony. For such period of incarceration, section 70.04 (1) (b) (v) extends and thereby tolls the 10-year limitation.
The question here is whether section 70.04 (1) (b) (v) operates to toll the 10-year limitation during a period of incarceration when the conviction on which the incarceration was based was vacated for newly discovered evidence under CPL 440.10 (1) (g) and the indictment subsequently dismissed on the District Attorney’s affirmation that the People would not be able to establish defendant’s guilt on a new trial. The Appellate Division, with two dissenters, vacated defendant’s sentence and remanded the matter for resentencing as a first felony offender. The majority of that court concluded that the time defendant had served for the invalid conviction could not be effective to extend the 10-year limitation and thus result in enhancing defendant’s punishment by making him a second felony offender. In their appeal to this Court, the People give the words "incarcerated for any reason” in section 70.04 (1) (b) (v)[2] a literal interpretation. They argue that incarceration for any reason at all other than for an unconstitutional conviction tolls the limitation period — even where, as here, the defendant has been imprisoned by the State under an invalid conviction and the State’s own agent moves to dismiss the indictment conceding that there is not enough proof of defendant’s commission of the crime to warrant a new trial. We disagree and, for reasons which follow, affirm the order of the Appellate Division.
I
On June 3, 1987, defendant pleaded guilty to two counts of *245 first degree robbery conditioned upon his right to challenge at sentencing his alleged status as a second violent felony offender. At the time of sentencing, the People offered as the predicate for defendant’s second violent felony offender status his December 28, 1972 conviction for robbery in the second degree. The People claimed that although more than 10 years had elapsed between the imposition of sentence for the 1972 conviction and the commission of the current felonies, the period of limitation was tolled pursuant to the provisions of section 70.04 (1) (b) (v) by reason of defendant’s incarceration from April 1, 1977 to March 13, 1979 and from September 10, 1979 to November 17, 1982. Defendant maintained that the period from September 10, 1979 to November 17, 1982 could not be effective to extend the 10-year period because that incarceration was pursuant to a prosecution under an indictment that was dismissed after the conviction had been vacated by the court under CPL 440.10 (1) (g). Because without the tolling of this period of incarceration the 1972 conviction would be beyond the 10-year period, defendant argued that he cannot be sentenced as a second violent felony offender. Supreme Court disagreed and sentenced defendant to concurrent indeterminate terms of imprisonment of 9 to 18 years.
The critical period of incarceration from September 10, 1979 to November 17, 1982 stems from the prosecution and conviction in 1980 of defendant for the allegedly forcible rape and sodomy of a female student at Cornell University where defendant was also enrolled. The incident occurred on August 18, 1979 in a graduate dorm in the room of the complaining witness, a casual acquaintance of defendant. The trial turned entirely on the credibility of defendant and complainant on the issue of consent. The jury accepted the complainant’s evidence and defendant was convicted. The Appellate Division affirmed (People v Dozier, 85 AD2d 846), with one Justice dissenting, who maintained that the proof was insufficient to establish defendant’s guilt beyond a reasonable doubt and that the verdict was against the weight of the credible evidence (see, dissenting opn of Main, J., id., at 846-847).
The crucial evidence which ultimately led to the vacatur of defendant’s 1980 rape and sodomy convictions came to light following the arrest of the complaining witness in July 1982 in New York City on arson charges. In connection with her defense on these charges, the complaining witness’s lawyer made available to the Manhattan District Attorney’s office the records of complainant’s extensive and continuing history of *246 emotional disturbances and psychiatric counseling dating from 1972.
The Manhattan District Attorney’s office sent the records to the District Attorney of Tompkins County where defendant had been tried and convicted on the basis of complainant’s testimony. The records contain reports of complainant’s interviews with a social worker, a psychiatrist and a psychiatric social worker, demonstrating that "the complainant suffered from psychological disorders which would have had serious impact on the veracity of her allegations against defendant” (People v Dozier, 163 AD2d 220, 221) and that "the complainant was confused about her sexual identity, had distorted perceptions of her encounters with men and had a pattern of perceiving herself as a victim.” (Id., at 221-222.) In particular, the records detailed complainant’s sexual intimacy with another woman and "revealed that the complainant had extreme behavioral reactions to rejection and would attempt to avenge or reverse the other person’s rejection of her.” (Id., at 222.)
Based on this theretofore unknown information, defendant moved for vacatur of his conviction on the grounds of newly discovered evidence under CPL 440.10 (1) (g). Tompkins County Judge Friedlander — before whom defendant had been tried and convicted in 1980 — ordered a full scale hearing on the motion at which the therapists who had treated the complainant and other witnesses were called to testify.[3]
In light of the newly revealed psychiatric and other evidence, the Trial Judge vacated defendant’s conviction and ordered a new trial, concluding that the evidence was of such a nature as to have probably changed the 1980 verdict. The Judge believed that the revelations about complainant’s sexual relationship would raise an inference that complainant may have instigated the encounter with defendant in order to instill jealousy in her lover who had recently spurned her. Judge Friedlander also observed that complainant’s "history of serious psychiatric and perceptual disorders * * * challenges her motives, her credibility, her perceptions, and perhaps even her competence as a witness” and that the records "establish a direct discrepancy between material trial testi *247 many and pretrial accounts which may have amounted to perjury”.
Following the vacatur of defendant’s conviction, the Tompkins County District Attorney made a written motion to dismiss the indictment. In his application, the District Attorney alluded to the newly adduced evidence concerning the complaining witness’s psychiatric problems as well as to critical evidence at the 1980 trial, summarized in Justice Main’s dissent at the Appellate Division (People v Dozier, 85 AD2d, at 846-847, supra), leading to the conclusion that complainant’s sexual encounter with defendant had been entirely consensual. The District Attorney concluded his application with this:
"It is my opinion that the People would not be able to prove beyond a reasonable doubt that Robert Dozier raped and sodomized [the complainant] on August 19, 1979, under all of the facts now presented to the court. I will not retry Mr. Dozier.”
Judge Friedlander dismissed the indictment "in the interests of justice”. This resulted in defendant’s release from Attica Correctional Facility on November 17, 1982 after three years and 68 days of incarceration on the vacated conviction.[4]
II
Notwithstanding the vacatur of defendant’s 1980 conviction and the dismissal of the indictment on motion of the District Attorney, the People maintain that the three years and 68 days during which defendant was confined in Attica on the invalid 1980 conviction should be used to extend the 10-year limitation so as to make him subject to an enhanced sentence as a second violent felony offender based on the 1972 conviction. Their argument comes to this. Section 70.04 (1) (b) (v), *248 they emphasize, provides for tolling of the 10-year limitation for "any period of time during which the person was incarcerated for any reason between the time of commission of the previous felony and the time of commission of the present felony”. (Emphasis added.) Reading this language literally, they contend that the tolling effect of subdivision (1) (b) (v) applies even when a defendant has been illegally incarcerated on an invalid and ultimately vacated conviction; such a conviction, they insist, would certainly be the reason for, or at least, the immediate cause of defendant’s illegal incarceration. It, thus, satisfies the statutory test of "incarceration for any reason”. Citing our decision in People v Love (71 NY2d 711), they argue that there is only one circumstance when section 70.04 (1) (b) (v) is not to be given this stringent application. They read People v Love (supra) as flatly ruling out any exception to the tolling provision of subdivision (1) (b) (v) save incarceration pursuant to a conviction which has been unconstitutionally obtained. Because defendant’s 1980 conviction, although concededly invalid, was not held to be unconstitutional and vacated for that precise reason, the argument goes, his confinement in Attica on the invalid conviction must be used to extend the 10-year limitation.
Defendant’s argument is twofold: first, that his conviction was unconstitutional and second, that, in any event, the Legislature could never have intended that section 70.04 (1) (b) (v) be given the harsh interpretation that the People urge; that nothing in the statute or in People v Love (supra) suggests that result. In support of the argument that his conviction and incarceration were unconstitutional defendant cites several Federal decisions (see, e.g., Jackson v Virginia, 443 US 307, 316 ["an essential of the due process guaranteed by the Fourteenth Amendment that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof — defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense”]; Townsend v Burke, 334 US 736 [uncounseled defendant who was sentenced on the basis of assumptions concerning his criminal record which were materially untrue, whether caused by carelessness or design, is deprived of due process of law]; Sanders v Sullivan, 863 F2d 218, 224 [2d Cir 1988], citing Durley v Mayo, 351 US 277 [a State’s failure to act to cure a conviction founded on a credible recantation by an important and principal witness exhibits sufficient State action to constitute a due process violation]).
*249 We need not pass on the merit of defendant’s constitutional arguments, however,[5] because we hold that section 70.04 (1) (b) (v) should not be given the strict reading that the People propose. In People v Love (71 NY2d 711, supra), in construing Penal Law § 70.06 (1) (b) (v)[6] together with CPL 400.21 (7) (b), the Court decided that incarceration on a conviction that had been unconstitutionally obtained should not be used to extend the 10-year limitation. In so holding, the Court stated that "when the statute says that incarceration 'for any reason’ extends the limitations period, it contemplates at least that the defendant has not been imprisoned without reason or unconstitutionally.” (Id., at 716 [emphasis added].) The Court noted that the legislative history did "not indicate a contrary intent as the People suggested]” (id., at 716). Contrary to the People’s argument, we believe that our holding in People v Love (supra) compels a similar application of the tolling provision here, since, at the very least, defendant has been "imprisoned without reason” (id., at 716 [emphasis added]).
If the People’s argument limiting the holding in Love to situations where a conviction has been held to be unconstitutional is credited, it must follow that the Legislature intended that the application of section 70.04 (1) (b) (v) to extend the 10-year period for an unjustified incarceration should depend on the difficult and sometimes blurred differences between a conviction that is invalid but not unconstitutional and one that is invalid and constitutional. Suffice it to say that nothing in the statute, in the legislative history or in People v Love lends support for the notion that the Legislature contemplated that the heavy consequences of treating a defendant as a second violent felony offender should turn on such jurisprudential niceties. Moreover, as defendant properly points out, the People’s position that the tolling must apply for every incarceration except for those pursuant to unconstitutional convictions can produce results that are bizarre, to say the least. The incarceration of a defendant on a conviction which has been vacated because new evidence has conclusively estab *250 lished. his innocence of the crime will, nevertheless, serve to toll the 10-year limitation so as to make him subject to enhanced sentencing as a second violent felony offender. On the other hand, a period of incarceration of a guilty defendant whose conviction has been reversed for a constitutional reason having nothing to do with his actual guilt of the crime will not be effective as a toll under section 70.04 (1) (b) (v); such an earlier conviction beyond the 10-year limitation could not be used to make that defendant a second violent felony offender.
On any analysis, the State’s position here appears, at best, incongruous. To someone like defendant who is being subjected to enhanced punishment because of the tolling for a period of a patently unjustified imprisonment, the State’s position must appear as the ultimate irony. The prior conviction on which he was incarcerated was vacated. The prosecution conceded that it could not establish his guilt. It is virtually certain that if the newly discovered evidence had been available earlier, the prosecution would never have been commenced. If it had not been, defendant would be sentenced as a first felony offender. Yet, because of what is now known to have been an unwarranted prosecution and the invalid sentence and incarceration which it produced, defendant, the State insists, must be sentenced as a second violent felony offender. The State’s explanation? The statute says "incarcerat[ion] for any reason” and the defendant was incarcerated for a reason — the invalid conviction which the State obtained.
We reject this position as being plainly unreasonable. We do not believe the Legislature intended section 70.04 (1) (b) (v) to be employed to permit the State to extend the 10-year limitation on prior violent felonies for an unjustified period of incarceration resulting from a flawed conviction under an indictment which was ultimately dismissed. (Accord, People v Beard, 143 AD2d 101; see generally, McKinney’s Cons Laws of NY, Book 1, Statutes §§ 141, 143, 145, 146, 148 [to the effect that statutes should be construed to avoid results which are absurd, unreasonable or mischievous or produce consequences that work a hardship or an injustice].)
The order of the Appellate Division should be affirmed.

. The sentence enhancement from a defendant’s status as a second violent felony offender involves both the maximum and minimum of the particular mandatory indeterminate sentence prescribed by the Penal Law. For example, the permitted range of the maximum term for a B felony first offender is from 6 to 25 years (Penal Law § 70.02 [3]); for a second violent felony offender the permitted maximum sentence must be from 12 to 25 years (Penal Law § 70.04 [3]). The mandatory minimum term for a first time violent felony offender is one third of the maximum sentence imposed (§ 70.02 [4]). The mandatory minimum term for a second violent felony offender is one half of the maximum (§ 70.04 [4]).

. Section 70.04 (1) (b) (v) reads: "In calculating the ten year period under subparagraph (iv), any period of time during which the person was incarcerated for any reason between the time of commission of the previous felony and the time of commission of the present felony shall be excluded and such ten year period shall be extended by a period or periods equal to the time served under such incarceration.” (Emphasis added.)

. Judge Friedlander’s lengthy decision contains detailed summaries of the testimony of three therapists, including the social worker’s conclusion that the complainant "reacted with rage when she felt she had been rejected by a female lover” and that she made "efforts to regain their intimacy by * * * deliberate seduction of her male rival.”

. After his release defendant brought a civil action in the Court of Claims for damages based on his unjust imprisonment. The trial court dismissed the action but the Appellate Division reinstated the claim. In so doing, the appellate court made this comment concerning the evidence adduced before Judge Friedlander in the CPL 440.10 hearing:
"The psychiatric evidence on its face supports the inference that the complainant pathologically lied about the nature of her encounter with claimant and admitted as much to her therapists. Thus, claimant has submitted facts going well beyond a general attack on the complainant’s credibility.” (Dozier v State of New York, 134 AD2d 759, 761.)

. The dissent, curiously, chooses to ignore these arguments raised by defendant. Under its view that only unconstitutional convictions may be avoided by the section 70.04 (1) (b) (v) toll, it appears it must reach and reject defendant’s constitutional arguments (see, CPL 400.21 [7] [b]) in order to find the time to be excludable.

. Penal Law § 70.06 (1) (b) (v) which deals with second felony offenders contains language that is identical to Penal Law § 70.04 (1) (b) (v) which deals with second violent felony offenders.